A. JACKSON *et al.* v. THE STATE OF KANSAS.

SURRENDER OF BAIL — *Sureties, When Released.* The sureties on a criminal recognizance for the appearance of a defendant, and to abide the judgment of the court and not depart without leave, are discharged from further liability where the defendant has duly appeared and received sentence, and thereafter has offered and submitted himself to the sheriff, to be taken into custody under the sentence imposed by the court.

*Error from Coffey District Court.*

THIS action was brought on a recognizance given in the case of The State of Kansas *v.* Thomas Jackson, which reads as follows:

"WHEREAS, Upon good cause shown, the above-entitled action was, on the 19th day of April, 1888, continued for judgment and sentence of the court against said defendant, unto the next term of the above-named court: Now, we, the undersigned residents of said county and state, bind ourselves to the state of Kansas, in the sum of two hundred and fifty dollars ($250), that said defendant, Thomas Jackson, shall be and appear before the judge of said court to receive judgment and sentence of the court upon the verdict of guilty in said cause found by the jury and filed against him, and abide the judgment of said court, and not depart the same without leave.

THOMAS JACKSON, *Principal.*

A. JACKSON, ⎫
NANCY JACKSON, ⎬ *Sureties.*"

The case was tried by the court, and the following findings of fact were made:

"1. The defendant, Thomas Jackson, gave the bond sued on to appear at the July term of court, 1888, to answer to a charge of violating the prohibitory law, to abide the judgment of the court, and not depart without leave.

"2. In pursuance of said bond, he appeared at said term of said court, was tried for said offense, convicted, and sentenced. Afterward, on the same day, after the adjournment of court in the evening, the defendant approached the sheriff in the courthouse and stated to him, substantially, as follows: 'Having been convicted and sentenced, I suppose my proper place is in your custody. Here I am, ready to be taken.' The sheriff replied, substantially, as follows: 'Well, I cannot conveniently take care of you. We have no jail, and I have no place to keep you over night. Besides, I have no papers by which to hold you in custody. No papers, have, as yet, been issued to me authorizing me to take you into custody. Can't you wait until morning?—and then I will be ready for you.' The defendant then replied, substantially, as follows: 'Yes, I guess I can wait; but don't this offer release my bondsmen?' The sheriff then said: 'I don't know, but I guess not. I think they are bound until you are taken into custody.' The defendant then stated: 'Well, I think they're released. I may not be here in the morning. If I am, I will come around; but if you want to be sure of me you had better take me now.' The above conversation took place in the presence of the county attorney and the judge.

"3. The said defendant has not since appeared at said court or submitted himself to the possession of the sheriff of said county. The above proceedings occurred in the latter part of the month of July, 1888. On the next morning after the aforesaid conversation the court adjourned to August 31 following, at which date there was an adjourned session of said court, at which a forfeiture of said bond was taken by the county attorney."

The defendants moved for judgment in their favor on these findings, but the court overruled the motion, and entered judgment against them for the amount of the recognizance, and costs. The defendants bring the case here for review.

*G. E. Manchester*, for plaintiffs in error:

When the defendant, Jackson, was sentenced and ordered committed, then, in the contemplation of the law, he was in the custody of the law.   He was in jail.   His bail no longer had a right to his custody.   They were no longer his jailers or bail, because they had no right to his person.   That right, by the judgment of the court, had been taken from them and vested in the executive officer of the law, the sheriff, and it was the duty of the court, through the sheriff, to take the person of said Jackson, in accordance with the judgment, and not permit him to depart.   The responsibility and liability of Jackson's bail then ceased.   It did not extend beyond the imposing of the sentence, because their right to the custody of Jackson was taken away by the judgment of the court.   See Crim. Code, §§ 245, 256; Kelley, Crim. Law, § 420; *In re Strickler*, 51 Kas. 700, 33 Pac. Rep. 620; *Roberts v. Gordon*, 12 S. E. Rep. (Ga.) 648; *Wilson v. People*, 10 Ill. App. 357. See, also, *Moorehead v. The State*, 38 Kas. 489; *Gibhart v. Drake*, 24 Ohio St. 176; *People v. Clary*, 17 Wend. 374.

*John T. Little*, attorney general, and *E. J. Crego*, for defendant in error:

The sheriff virtually said: "I have no commitment on which to take you to Ottawa to-day, and I cannot take you there to-day, and I have no place where I can safely keep you.   You are more secure on bond than you would be in my custody.   Should I take you into custody, your bondsmen would be released.   I cannot take you into custody to-day."   The conversation occurred in the presence of the judge. Instead of the court granting leave to depart, it seemed to entertain the same views as did the sheriff, and the plain inference was, that the court would require Jackson's presence upon the following day, that he might be taken to jail.

Under the exigencies of this case, the court might well have been permitted to exercise that discretion which, unless abused, can be no ground of complaint in this court.   And

"the departure without leave of court is a distinct breach." 2 Am. & Eng. Encyc. of Law, 33; Kelley, Crim. Law, 2d ed., 100; 1 Bish. Crim. Proc., § 264*j*, and cases cited. See, also, Crim. Code, § 183.

The opinion of the court was delivered by

ALLEN, J.: The only question in this case is, whether, under the facts found by the court, the defendant had complied with the condition of the recognizance. The trial court finds that he appeared to receive sentence, and thereafter presented himself to the sheriff for the purpose of being taken into custody; that the sheriff declined to take him, and asked him to wait till the next day.

The liability of the sureties terminated when the defendant had fully complied with the terms of the recognizance. Section 256 of the criminal code provides:

" Where any convict shall be sentenced to any punishment, the clerk of the court in which sentence was passed shall forthwith deliver a certified copy thereof to the sheriff of the county, who shall, without delay, either in person or by a general or usual deputy, cause such convict to receive the punishment to which he was sentenced."

The sheriff made two excuses for not taking the prisoner into custody at the time he offered to surrender himself, namely, that he had no papers by which to hold him, and no place to keep him over night. Neither of the excuses was good. The law makes it the duty of the clerk to forthwith deliver the sheriff a certified copy of the judgment; and where the party himself raised no objection to being taken into custody on the ground of want of papers, we do not think the sheriff himself can make it. But a very brief time would be required for the clerk to make up the record and certified copy thereof required by the statute. As to the other objection, it is the duty of the sheriff to take prisoners into his custody and keep them. If he has no convenient place for doing so, he must use one that is not so convenient. Sureties on criminal recognizances are not bound to answer for the conduct of a prisoner after it

becomes the duty of the sheriff to take him into custody, after judgment, and after the defendant has submitted himself for that purpose.

The words "not depart without leave" in the bond do not mean that the defendant will not escape from the custody of the sheriff. The "leave" means leave of the court. So far as the record shows, the sentence was final, and to be executed at once. There is nothing showing that the court granted any stay, or directed the defendant to appear in the court at any future time. Under the ruling in *In re Strickler*, 51 Kas. 700, 33 Pac. Rep. 620, the operation of the sentence began at once, and it was the duty of the sheriff to carry it into effect. See, also, *Moorehead v. The State*, 38 Kas. 490; *McGarry v. The State*, 37 id. 9.

Judgment will be reversed, with the direction to enter judgment, on the findings of the trial court, in favor of the defendants for costs.

All the Justices concurring.